# EXHIBIT A

CNA

## POLICY CERTIFICATION

**I,Teika Baker, not individually but as an agent of Continental Casualty Company certify that I am employed as an agent of Continental Casualty Company; that I have limited or no Personal knowledge of the attached policy # 658734374; that having made due inquiry of the Company's records and the knowledge of other company agents as necessary, I believe the attached to be a true and accurate copy of all or a portion of the policy issued to:**

| | |
|---|---|
| **Named Insured** | **Meshinsky & Associates LLC** |
| **Policy Number:** | **APL 658734374** |
| **Policy Term** | **March 01, 2021 TO March 01, 2022** |
| | |

**for the following coverages**

| |
|---|
| **This certificate is to include any and all Endorsements for policy** |
| |
| |

**In the event that as result of a reasonable search, complete copies of all policy Endorsements are not available at this time, they will be forwarded to you should they become available at a later date. The following endorsements and forms are also a part of this policy but have not been located:**

| FORM NUMBER | DESCRIPTION |
|---|---|
| | |
| | |
| | |
| | |
| | |

| | |
|---|---|
| [signature] | **07/11/2022** |
| **Signature** | **Date** |

# AICPA PROFESSIONAL LIABILITY INSURANCE PROGRAM

*The Experience To Protect Your Future*

1100 Virginia Drive, Suite 250
Fort Washington, PA 19034-3278
Phone: (800) 221-3023
Fax: (800) 853-5227
www.cpai.com

March 05, 2021
Client No.: 0504461000
Policy No.: APL 658734374
Policy Period: 3/01/21 To 3/01/22

Meshinsky & Associates LLC
Philip Meshinsky
1155 W Chestnut St
Union, NJ 07083

Dear Philip Meshinsky:

Thank you for your firm's participation in The Premier Plan, underwritten by a CNA member Company, one of the CNA insurance companies. Your policy is enclosed and is effective as of the date listed above.

Please remember to notify us if you plan to merge, acquire or otherwise materially affect the present composition of your firm (including areas of practice and professional staff) during the policy period. You may be required to submit a new application in advance of the change for underwriting analysis and coverage amendments.

As compensation for providing insurance services on your behalf under the AICPA Professional Liability Insurance Program, Aon Insurance Services, a division of Affinity Insurance Services, Inc., received a total of $398.18 in commission for the most recently completed policy year. Services provided include program marketing, underwriting, policy management, billing, risk management and other client services.

Should you have any questions about your coverage, please don't hesitate to call us toll free at 1-800-221-3023. We look forward to serving your professional liability insurance needs now and in the future.

Sincerely,
***Aris Matos***

Aon Insurance Services
AICPA Program Administrator
PPOLRN

Aon Insurance Services is a division of Affinity Insurance Services, Inc.; in CA, MN & OK, (CA License #0795465) Aon Insurance Services is a division of AIS Affinity Insurance Agency, Inc.; and in NY, AIS Affinity Insurance Agency. ©2007

One or more of the CNA companies provide the products and/or services described. The information is intended to present a general overview for illustrative purposes only. It is not intended to constitute a binding contract. Please remember that only the relevant insurance policy can provide the actual terms, coverages, amounts, conditions and exclusions for an insured. All products and services may not be available in all states and may be subject to change without notice. CNA is a service mark registered with the United States Patent and Trademark Office. Copyright © 2008 CNA. All rights reserved.

CNA

# ACCOUNTANTS PROFESSIONAL LIABILITY POLICY

**YOUR ACCOUNTANTS PROFESSIONAL LIABILITY INSURANCE IS WRITTEN ON A "CLAIMS-MADE" BASIS. IT PROVIDES COVERAGE FOR THOSE CLAIMS WHICH ARE BOTH FIRST MADE AGAINST YOU AND REPORTED TO US IN WRITING DURING THE POLICY PERIOD.**

Throughout this Policy, the terms "we", "us" and "our" refer to the Stock Insurance Company, named on the Declarations, providing this insurance.

## I. DEFINITIONS

The following terms shown in **bold face** type in this Policy will have only the meaning indicated below:

**Advertising injury** means injury that arises in the course of advertising **your professional services** by reason of:
A. the oral or written publication of material that slanders or libels an individual or entity or disparages its goods, products or services;
B. misappropriation of advertising ideas or style of doing business; or
C. infringement of copyright, title or slogan.

**Bankruptcy trustee** means the individual appointed by the U.S. Trustee or elected by creditors or appointed by a judge to administer the bankruptcy estate during a bankruptcy case.

**Benefit plan fiduciary** means any of **you** while exercising discretionary authority or discretionary control:
A. respecting management of an employee benefit plan;
B. respecting disposition of the assets of an employee benefit plan, including but not limited to purchasing or selling investments on behalf of such a plan; or
C. in the administration of an employee benefit plan.

**Bodily injury** means injury to the body, including sickness or disease sustained by any person and death resulting from such injuries; emotional distress or mental anguish sustained by any person whether or not resulting from such injury; and all injuries that are a consequence of the foregoing. However, **bodily injury** does not include emotional distress or mental anguish arising from **personal injury**.

**Claim** means a demand received by **you** for money or services naming **you** and alleging an act or omission, including **personal injury** or **advertising injury,** in the rendering of **professional services**. A demand shall include the service of suit or the institution of arbitration proceedings against **you**.

**Claim** also means:
A. **privacy claims**; and

 © CNA All Rights Reserved. 

B. **client network damage claims**.

**Claim expenses** are those fees charged by an attorney we designate or consent to, and all other fees, costs and expenses resulting from the investigation, adjustment, expert analysis, defense and appeal of a **claim**, if incurred by us or by **you** with our written consent. **Claim expenses** do not include salaries of our employees or officers, or fees and expenses of independent adjusters retained by us.

**Client network damage claim** means a demand received by **you** for money or services naming **you** and alleging that a **security breach** or **electronic infection** caused **network damage** to a client's **network** in the rendering of **professional services**. A demand shall include the service of suit or the institution of arbitration proceedings against **you**.

**Computer virus** means unauthorized computer code that is designed and intended to transmit, infect and propagate itself over one or more **networks**, and cause:

A. computer code or programs to perform in an unintended manner;
B. the deletion or corruption of electronic data or software; or
C. the disruption or suspension of a **network**.

**Confidential commercial information** means information that has been provided to **you** by another, or created by **you** for another, where such information is subject to the terms of a confidentiality agreement or equivalent obligating **you** to protect such information on behalf of another.

**Court-appointed receiver** means a disinterested person appointed by a court for the protection or collection of property that is the subject of diverse claims because such property belongs to a bankrupt entity or is otherwise being litigated.

**Crisis event** means:

A. the death, departure or debilitating illness of a **Principal Insured**;
B. the dissolution of the **Named Insured**;
C. an incident of workplace violence; or
D. the arrest of, or initiation of a criminal investigation or criminal proceeding against, a **Principal Insured** in connection with the rendering of **professional services**;

that the **Named Insured** reasonably believes will have a material adverse effect upon the **Named Insured's** reputation.

**Crisis event expenses** means reasonable fees, costs and expenses incurred by the **Named Insured** for consulting services provided by a public relations firm to the **Named Insured** in response to a **crisis event**.

**Damages** are monetary judgments, awards and settlements, **you** are legally obligated to pay because of a **claim**, provided any settlement is negotiated by

 © CNA All Rights Reserved. 

CNA

or with our assistance and approval. **Damages** also include prejudgment or post-judgment interest awarded against **you** on such judgments or awards.

**Damages** do not include:
A. civil or criminal fines, penalties, sanctions or forfeitures, imposed on **you** whether pursuant to law, statute, regulation or court rule;
B. punitive or exemplary amounts, and the multiplied portion of multiplied awards on **claims** otherwise payable under this Policy;
C. amounts for which **you** are not financially liable or that are without legal recourse to **you**;
D. amounts owed by **you** to **your** client by reason of money loaned to or invested with **you** in **your** individual capacity for **your** personal use or investment in **your** own venture;
E. injunctive or declaratory relief.

**Denial of service attack** means an attack executed over one or more **networks** or the **internet** that is specifically designed and intended to disrupt the operation of a **network** and render a **network** inaccessible to authorized users.

**Dissolution** means:
A. the termination of the legal existence of an organization, regardless of structure, whether by legislation, surrender, expiration or forfeiture of charter for any cause, bankruptcy; or
B. loss of all of an entity's partners, principals, officers or directors; or
C. the cessation of the rendering of **professional services**.

**Electronic infection** means the transmission of a **computer virus** to a **network**, including without limitation, such transmission to or from **your network**.

**Electronic information damage** means the **unauthorized access** to, destruction of, addition to, deletion of or alteration to any:
A. third-party's information residing on **your network**; or
B. information residing on the **network** of **your** client, if caused by **you** in the rendering of **professional services**.

**Internet** means the worldwide public **network** of computers as it currently exists or may be manifested in the future, but **internet** does not include **your network**.

**Interrelated acts or omissions** mean all acts or omissions in the rendering of **professional services** that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

**Interrelated claims** are all **claims** arising out of a single act or omission or arising out of **interrelated acts or omissions** in the rendering of **professional services**.

**Investment advisory services** means:

 © CNA All Rights Reserved. 

CNA

A. giving financial, economic or investment advice, including personal financial planning; or
B. performing investment management services with respect to investments in securities or insurance products or investments in real estate;

whether the advice or services referred to in paragraphs A. or B. of this definition are given or performed as a registered or unregistered investment advisor.

However, the services referred to in paragraph B. of this definition do not include the barter, purchase or sale of securities or insurance products.

**Named Insured** means the individual or entity named on the Declarations as the **Named Insured**.

**Network** means a party's local or wide area network owned or operated by or on behalf of or for the benefit of that party; provided, however, **network** shall not include the **internet**, telephone company **networks**, or other public infrastructure **network**.

**Network damage** means:

A. the unscheduled or unplanned inability of an authorized user to gain access to a **network**;
B. **electronic information damage**; or
C. the suspension or interruption of the operation of any **network**.

**Non-public personal information** means personal information not available to the general public from which an individual may be identified, including without limitation, an individual's name, address, telephone number, social security number, account relationships, account numbers, account balances, and account histories.

**Outside organization** means:

A. a not-for-profit corporation, fund, foundation or organization that is exempt from federal income tax as an organization described in Section 501(c)(3), 501(c)(4), 501(c)(6) or 501(c)(7) of the Internal Revenue Code of 1986, as amended; and
B. that has been reported on the **Named Insured's** most recent application or renewal application with us.

**Outside organization director** means an individual who was, is or shall be duly elected to a position, however named, in the governing body of an **outside organization**.

**Outside organization matter** means a written or oral demand for money received by **you**, naming **you** and alleging an error, misstatement, misleading statement, act, omission, neglect or breach of duty by **you** in **your** capacity as an **outside organization director** or **outside organization officer**. A demand shall include the service of suit or the institution or notice of any administrative, investigative, arbitration or other proceeding against **you**.

 © CNA All Rights Reserved. 

CNA

**Outside organization officer** means an individual who was, is or shall be duly elected or appointed as an officer of an **outside organization**.

**Personal fiduciary** is an executor, administrator or representative of an estate or a trustee of a **personal trust**.

**Personal injury** means libel, slander, disparagement, false arrest, wrongful detention, false imprisonment, wrongful entry or eviction or other invasion of the right of private occupancy, malicious prosecution or violation of an individual's or entity's right of privacy. **Personal injury** also includes emotional distress and mental anguish arising from any of the above.

**Personal trust** means an individual or family trust established for the sole benefit of the individual or family or a charitable remainder trust as defined under Internal Revenue Code Section 664.

**Policy period** means the period of time from the effective date and time shown in the Declarations and the date and time of termination, expiration or cancellation of this Policy.

**Predecessor firm** means:

A. a partnership, professional corporation, professional association, limited liability corporation or limited liability partnership engaged in **professional services** which has undergone **dissolution** and from which 50% or more of the owners, partners, or officers have joined the **Named Insured** as an owner, partner, officer, associate or employee;

B. a sole proprietor engaged in **professional services** which has joined the **Named Insured** as an owner, partner, officer, associate or employee unless otherwise excluded by endorsement; or

C. any individual or entity identified as a **predecessor firm** by endorsement to this Policy.

**Principal Insured** means an **Insured** member of the board of managers, director, executive officer, natural person partner, owner of a sole proprietorship, principal, risk manager or in-house general counsel of the **Named Insured**.

**Prior acts date**, if any, is indicated on the Declarations. This Policy excludes from coverage all **claims** by reason of acts or omissions that happened before the **prior acts date**.

**Prior insurer** means an insurer, including us and any subsidiary or affiliate of ours, who has issued prior accountants professional liability insurance coverage.

**Privacy breach notice law** means any statute or regulation that requires an entity who is the custodian of **non-public personal information** to provide notice to individuals of any actual or potential privacy breach with respect to such **non-public personal information. Privacy breach notice laws** include


© CNA All Rights Reserved.

CNA

Sections 1798.29 and 1798.82- 1798.84 of the California Civil Code (formerly S.B. 1386) and other similar laws in any jurisdiction.

**Privacy claim** means a demand received by **you** for money or services naming **you** and alleging **privacy injury and identity theft** that occurred in the rendering of **professional services**. A demand shall include the service of suit or the institution of arbitration proceedings against **you**.

**Privacy injury and identity theft** means:

A. any unauthorized disclosure of, inability to access, or inaccuracy with respect to, **non-public personal information** in violation of:
   1. **your privacy policy**; or
   2. any federal, state, foreign or other law, statute or regulation governing the confidentiality, integrity or accessibility of **non-public personal information**, including but not limited, to the Health Insurance Portability and Accountability Act of 1996, Gramm-Leach-Bliley Act, Children's Online Privacy Protection Act, or the EU Data Protection Act.

B. **your** failure to prevent **unauthorized access** to **confidential commercial information**.

**Privacy policy** means **your** policies in written or electronic form that:

A. govern the collection, dissemination, confidentiality, integrity, accuracy or availability of **non-public personal information**; and

B. **you** provide to **your** customers, employees or others who provide **you** with **non-public personal information**.

**Professional services** mean those services performed:

A. in the practice of public accountancy by **you** for others for remuneration that inures to the benefit of the **Named Insured**, including but not limited to consulting services and **investment advisory services**;

B. by **you** for others for remuneration that inures to the benefit of the **Named Insured** as:
   1. a **bankruptcy trustee**, **court-appointed receiver**, or **personal fiduciary**; or
   2. an arbitrator, mediator or notary public;

C. by **you** for others as a member of a formal accreditation, standards review or similar professional board or committee related only to the accounting profession; or

D. by **you** for others as a **benefit plan fiduciary**.

**Professional services** also mean those services identified in paragraphs A. and B. above when rendered on a pro bono basis by those of **you** specified in paragraphs A. and B. of the definition of **You** and **your**, if at the time such services were undertaken, a partner, officer or director of the **Named Insured** approved the rendering of such services without compensation to any of **you**.

**Regulatory proceeding** means an administrative, disciplinary, investigative


© CNA All Rights Reserved.

CNA

or regulatory proceeding initiated against **you** by a state licensing board, self-regulatory body, public oversight board, governmental agency or any entity acting on their behalf that has the authority to regulate **your professional services**.

A **regulatory proceeding** shall be deemed initiated:

A. on the date of service upon or other receipt by **you** of a complaint against **you** in such proceeding; or
B. upon **your** being identified in writing and by name in an order of investigation, subpoena, Wells Notice, target letter (within the meaning of Title 9, §11.151 of the United States Attorney's Manual), or other similar document as someone against whom a **regulatory proceeding** may be brought.

**Security breach** means the failure of **your network** hardware, software or firmware, the function or purpose of which is to:

A. identify and authenticate parties prior to accessing **your network**;
B. control access to **your network** and monitor and audit such access;
C. protect against **computer viruses**;
D. defend against **denial of service attacks** upon **you** or unauthorized use of **your network** to perpetrate a **denial of service attack**;
E. ensure confidentiality, integrity and authenticity of information on **your network**.

**Unauthorized access** means any accessing of information in **your** care, custody or control by unauthorized persons or by authorized persons accessing or using such information in an unauthorized manner. **Unauthorized access** also includes:

A. theft from **you** of any information storage device used by **you** to:
   1. store and retrieve information on **your network**; or
   2. transport information between **you** and authorized recipients;
B. any unauthorized use by **you** of information in **your** clients' care, custody or control if accessed by **you** in the course of rendering **professional services**.

**You** and **your** means the **Named Insured** and any **predecessor firm** and:

A. any person who is or becomes a partner, officer, director, associate, or employee of the **Named Insured** but only for **professional services** performed on behalf of the **Named Insured**;
B. any person previously affiliated with the **Named Insured** or a **predecessor firm** as a partner, officer, director, associate, or employee but only for **professional services** performed on behalf of the **Named Insured** or a **predecessor firm** at the time of such affiliation;
C. any person or entity that is an independent contractor to the **Named Insured** provided that such person or entity is not:
   1. employed by the **Named Insured** or **predecessor firm** or by any entity controlled, owned, managed or operated by the **Named**

 © CNA All Rights Reserved. 

CNA

**Insured** or **predecessor firm**; or

2. controlled, owned, managed or operated by the **Named Insured** or **predecessor firm** or by any entity that is controlled, owned, managed or operated by the **Named Insured** or **predecessor firm**;

but only for **professional services** performed on behalf of the **Named Insured** and only to the extent that remuneration for such services inures to the benefit of the **Named Insured**.

## II. COVERAGE AGREEMENTS

A. In accordance with all the terms and conditions of this Policy, we will pay on **your** behalf all sums in excess of the deductible, up to our limits of liability, that **you** become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against **you** and reported in writing to us during the **policy period** by reason of an act or omission in the performance of **professional services** by **you** or by any person for whom **you** are legally liable provided that:

1. **you** did not give notice to a **prior insurer** of any such act or omission or **interrelated act or omission**;
2. prior to the effective date of this Policy, none of **you** had a basis to believe that any such act or omission, or **interrelated act or omission**, might reasonably be expected to be the basis of a **claim**;
3. such act or omission happened subsequent to the **prior acts date**;
4. **you** did not give notice to a **prior insurer** of an **interrelated claim**.

B. We have the right and duty to defend any **claim** seeking **damages**, even if any of the allegations of the **claim** are groundless, false or fraudulent. We will investigate any such **claim** as we deem appropriate. We will not settle any **claim** without **your** written consent, which shall not be unreasonably withheld. **You** and we agree to consult with each other, and, if **you** are a member, with the American Institute of Certified Public Accountants, to resolve any differences relating to such settlement.

C. We are not obligated to investigate, defend, pay or settle a **claim** after the applicable limit of our liability has been exhausted by payment of **damages** or **claim expenses** or by any combination thereof, or after we have tendered the remaining available limits of liability into a court of competent jurisdiction. In such case, we shall have the right to withdraw from the further investigation, defense or settlement of any **claim** by tendering control of said investigation, defense or settlement to **you**. We will initiate, and cooperate in, the transfer of control to **you** of any **claims** that were reported to us prior to the exhaustion of such limit. **You** must cooperate in the transfer of control of such **claims**. We agree to take the necessary steps, as we deem appropriate, to avoid a default in such

 © CNA All Rights Reserved. 

CNA

**claims** until such transfer has been completed, provided **you** cooperate in completing such transfer. **You** must reimburse us for expenses we incur in taking those steps we deem appropriate to avoid a default.

D. If we conclude that the limit of liability applicable to any **claim** may become exhausted prior to the conclusion of the **claim**, we will notify the **Named Insured**, in writing, as soon as practicable, to that effect. When the limit of liability applicable to any **claim** has actually been exhausted prior to the conclusion of the **claim**, we will notify the **Named Insured**, in writing, as soon as practicable, that such limit has been exhausted.

## III. LIMITS OF LIABILITY

A. Each **Claim**

Subject to B. below, the limit of liability for **damages** and **claim expenses** for each **claim** shall not exceed the amount stated in the Declarations as "Per **claim**."

B. Aggregate

Subject to A. above, the limit of our liability for **damages**, and **claim expenses** for all **claims** shall not exceed the amount stated in the Declarations as "Aggregate."

C. Deductible

Our obligation to pay **damages** and **claim expenses** as a result of a **claim** is in excess of the applicable amount of the deductible. The **Named Insured** agrees to pay all **damages** and **claim expenses** up to the amount of such deductible. The deductible amount applies either on a per **claim** or on an aggregate basis as is indicated on the Declarations. Payment of the deductible or portions thereof shall be made by the **Named Insured** as **claim expenses** are incurred or **damages** are paid.

D. Multiple insureds, **claims** and claimants

The limits of liability shown in the Declarations and subject to the provisions of this Policy is the amount we will pay as **damages** and **claim expenses** regardless of the number of **you**, **claims** made or persons or entities making **claims**. If **interrelated claims** are subsequently made against **you** and reported to us, all such **interrelated claims**, whenever made, shall be considered a single **claim** first made and reported to us within the **policy period** in which the earliest of the **interrelated claims** was first made and reported to us.

E. Risk Management Incentives

1. Mediation

 © CNA All Rights Reserved. 

CNA

With respect to a **claim**, **your** deductible applying to the **claim** will be reduced by 50%, provided that:

a. the **claim** is mediated by an independent, disinterested third party mediator who is compensated for such services and who is appointed by us or approved by us in writing;
b. the **claim** is mediated either without institution of arbitration proceedings or service of suit or within 60 days of the institution of such proceedings or service of suit; and
c. such **claim** is ultimately resolved for an amount acceptable to **you** and us.

In no event shall the amount of the deductible waived hereunder exceed $50,000.

2. Use of Engagement Letters

If **you** utilized an engagement letter in any engagement other than audit services or attest services:

a. that was signed within the preceding 11 month period prior to rendering the **professional services** at issue in the **claim**; and
b. the **claim** is otherwise covered under the Policy;

then we will reduce **your** deductible, applying to that **claim**, by 50%, up to a total amount of $5,000.

In the event that paragraphs E.1. and E.2. both apply to a **claim**, in no event shall the total amount of the deductible waived for that **claim** exceed $50,000.

## IV. SUPPLEMENTARY BENEFITS

While not **damages**, we will make the following payments in addition to our limits of liability. No Deductible applies to any payments made under this Supplementary Benefits Section.

1. Defendants Reimbursement

We agree to pay **you** $100 per hour for the time **you** spend to attend a trial, court hearing, mediation or arbitration proceeding at our request in connection with a **claim**.

2. **Regulatory Proceeding**

We agree to pay **your** attorney fees and other reasonable costs, fees and

 © CNA All Rights Reserved. 

CNA

expenses incurred in responding to a **regulatory proceeding** initiated during the **policy period** and reported to us in accordance with Section VI.C. of this Policy, provided that such **regulatory proceeding** is initiated in connection with:

a. an act or omission in the rendering of **professional services**; or

b. an actual or alleged violation of a **privacy breach notice law** or any law referenced under the definition of **privacy injury and identity theft**, but only if such actual or alleged violation concerns **confidential commercial information** or **non-public personal information** that was gathered in the course of rendering **professional services**;

that occurred after the **prior acts date** indicated on the Declarations.

The maximum amount we will pay for such attorney fees and other reasonable costs, fees and expenses is $25,000 regardless of the number of **regulatory proceedings** or the number of **you** who are subject to such **regulatory proceedings**.

3. Subpoena Assistance

If during the **policy period**, **you** receive a subpoena for documents or testimony as a fact witness arising from an act or omission in the rendering of **professional services** which occurred after the **prior acts date**, and **you** would like our assistance in responding to the subpoena, **you** may provide us with a copy of the subpoena and we will retain an attorney to provide advice regarding the production of documents, to prepare **you** for sworn testimony, and to represent **you** at **your** deposition, provided that:

a. the subpoena arises out of a lawsuit to which **you** are not a party; and

b. **you** have not been engaged to provide advice or testimony in connection with the lawsuit, nor have **you** provided such advice or testimony in the past.

Any notice **you** give us of such subpoena shall be deemed notification of a potential **claim** under Section VI.D. of this Policy.

4. Defense of Third Party Discrimination Demand

If, during the **policy period**, a demand is received by **you** for money or services and

a. arises solely from **your** alleged refusal after the **prior acts date** to provide **professional services** due to discrimination, for reasons of age, race, creed, color, gender, religion national origin,

 © CNA All Rights Reserved. 

CNA

disability, marital status or sexual preference; and

b. does not arise out of **your** intentional disregard or willful failure to comply with federal or state laws governing discriminatory practices; and

c. the demand is otherwise covered under the terms and conditions of the Policy but for the absence of the rendering of **professional services**;

then we will provide **you** with a defense subject to **your** deductible and the available limits of liability in the Policy. There will be no coverage for **damages** regardless of the ultimate findings.

5. **Outside Organization Matter**

We agree to pay **your** attorney fees and other reasonable costs, fees and expenses incurred in responding to an **outside organization matter** initiated during the **policy period** and reported to us in accordance with Section VI.C. of this Policy, provided that:

a. **you** did not give notice of the acts, errors or omissions, or related acts, errors or omissions, that form the basis of such **outside organization matter** to a prior insurer (including us or any subsidiary or affiliate of ours) that issued prior outside organizations directors and officers coverage;

b. prior to the inception date of this Policy, **you** had no basis to believe that such acts, errors or omissions, or related acts, errors or omissions, might reasonably be expected to be the basis of an **outside organization matter**;

c. such acts, errors or omissions occurred after the **prior acts date** indicated on the Declarations;

d. **your** service as an **outside organization director** or **outside organization officer** for such **outside organization** was performed with the knowledge and explicit approval of the **Named Insured**; and

e. any indemnification available to **you** for attorney fees and other costs, fees and expenses from the **outside organization** or its insurers has been exhausted.

The maximum amount we will pay for such attorney fees and other reasonable costs, fees and expenses is $15,000 per **outside organization matter**, regardless of the number of **you** who are subject to such **outside organization matter**, up to a maximum of $30,000 per **policy period** for all **outside organization matters**.

 © CNA All Rights Reserved. 

CNA

6. **Crisis Event Expenses**

We agree to pay up to a maximum of $20,000 per **policy period** for **crisis event expenses** that result from all **crisis events** first occurring and reported in writing to us during the **policy period**.

## V. EXCLUSIONS

This Policy does not apply to:

A. any **claim** for **bodily injury** regardless of cause;

B. any **claim** for damage to, destruction of, or loss of use of tangible property.

This exclusion does not apply to client records which are in **your** care, custody or control;

C. any **claim** based on or arising out of liability assumed under any contract or agreement unless **you** would have been liable if the contract or agreement did not exist;

D. any **claim** based on or arising out of a dishonest, illegal, fraudulent, criminal or malicious act by any of **you.** We shall provide **you** with a defense of such **claim** unless or until the dishonest, illegal, fraudulent, criminal or malicious act has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not. Such defense will not waive any of our rights under this Policy. Criminal proceedings are not covered under this Policy regardless of the allegations made against **you**. This exclusion shall not apply to the coverage provided to the **Named Insured** for **crisis event expenses**;

E. any **claim** based on or arising out of **professional services** performed for any entity, including an entity held in a **personal trust**, if at the time of the act or omission giving rise to the **claim**, **you** or **your** spouse were a director, officer or partner of, or had management responsibilities for, such entity, or the owner of more than a 15% equity interest in such entity;

F. any **claim** based on or arising out of **professional services** rendered by **you** as an executor, administrator or personal representative of an estate or as a trustee if **you** or **your** spouse are a beneficiary or distributee of said estate or trust;

G. any **claim** based on or arising out of **your** capacity as:
   1. an officer, director, trustee, partner or other member of a governing body of an entity, other than the **Named Insured**. This exclusion shall not apply to the coverage provided to

 © CNA All Rights Reserved. 

CNA

**outside organization directors** and **outside organization officers**;
2. a guardian or conservator of an individual;
3. a conservator of an entity;
4. a trustee for an investment fund established for the benefit of any entity or group of unrelated individuals. This exclusion shall not apply to an accountant when acting as a trustee for a **personal trust**; or
5. a plan administrator of an employee benefit plan, or the trustee of any trust established to fund such plan, or any other fiduciary of such plans, regardless of whether the **claim** is brought against **you** under the Employee Retirement Income Security Act of 1974, its amendments or any other similar state or local law. This exclusion does not apply:

    a. with respect to coverage provided to **you** as a **benefit plan fiduciary**; or

    b. if **you** are deemed to be a fiduciary solely by virtue of **professional services you** render as an accountant to the plan, including accounting, audit, attest, consulting, tax, investment advisory services, or administrative services to an employee benefit plan as an independent third party consultant;

H. any **claim** based on or arising out of **your** capacity as a broker or dealer in securities, as those terms are defined in Sections 3(a)(4) and 3(a)(5), respectively, of the Securities Exchange Act of 1934;

I. any **claim** based on or arising out of any anti-trust law violation or any agreement or conspiracy to restrain trade unless the allegations arise solely from **your** performance of **professional services** as a member of a formal accreditation, standards review or similar professional board or committee, related only to accountancy, and such services are within the scope of that committee's or board's established guidelines;

J. any **claim** based on or arising out of the gaining of any personal profit or advantage to which **you** are not legally entitled in the rendering of **professional services** in **your** capacity as a **personal fiduciary**;

K. solely with respect to **benefit plan fiduciaries**, any **claim** based on or arising out of:
1. discrimination in the administration of an employee benefit plan or acceptance of participation in such employee benefit plan;
2. the failure to collect contributions owed to an employee benefit plan or other employee program or for the return or any contributions to an employer if such amounts are or could be chargeable to the employee benefit plan or other employee

 © CNA All Rights Reserved. 

CNA

program;

3. benefits paid or payable to a participant or beneficiary of an employee benefit plan or other employee programs if such benefits are paid or may lawfully be paid from the funds of such employee benefit plan or other employee program;
4. failure to comply with any law concerning worker's compensation, unemployment insurance, social security benefits or disability benefits;
5. failure or omission to effect and maintain insurance or bonding for employee benefit plan property or assets; or
6. the bankruptcy of or suspension of payment by any bank, banking firm or other financial institution or by any broker/dealer in securities or commodities.

## VI. POLICY CONDITIONS

A. Coverage Territory

This Policy applies to acts or omissions committed by **you** anywhere in the world, regardless of where the **claim** is made or suit is brought. If covered **damages** are stated or incurred in a currency other than that of the United States of America, such payment will be made in the currency of the United States of America at the rate of exchange published in The Wall Street Journal on the date the Insurer's obligations to pay such **damages** are established (or if not published on such date, the next publication date).

B. Sole Agent

The **Named Insured** shall be the sole agent of all of **you** for the purpose of effecting or accepting any notices hereunder, any amendments to or cancellation of this Policy; for the completing of any applications; for the making of any statements, representations and warranties; for the payment of any premium and the receipt of any return premium that may become due under this Policy; and for the exercising of, or declining to exercise any right under this Policy.

C. Duties in the event of a **claim**

1. **You** must give us written notice as soon as reasonably possible during the **policy period** of any **claim** made against **you**. We agree that **you** may have up to, but not to exceed, 60 days after the Policy expiration to report to us a **claim** made against **you** during the **policy period** if the reporting of such **claim** is as soon as reasonably possible.

2. **You** must:
   a. immediately forward all documents received in connection with the **claim** to us;

 © CNA All Rights Reserved. 

b. fully cooperate with us or our designee in the investigation, the making of settlements, the conduct of suits or other proceedings, or enforcing any right of contribution or indemnity against another who may be liable to **you** in connection with a **claim**;

c. attend depositions, hearings and trials;

d. assist in securing and giving evidence obtaining the attendance of witnesses; and

e. refuse, except at **your** own cost, to admit any liability, assume any **damages,** voluntarily make any payments, or incur any **claim expenses**.

D. Duties in the event of a potential **claim**

If, during the **policy period**, **you** become aware of an act or omission that may reasonably be expected to be the basis of a **claim** against **you**, **you** must give written notice to us prior to the expiration of the **policy period**. Such notice must state the reasons for anticipating a **claim**, with full particulars, including but not limited to:

1. the specific act or omission;
2. the dates and persons involved;
3. the identities of anticipated or possible claimants;
4. the circumstances by which **you** first became aware of the potential **claim**.

If such notice is given, then any **claim** that is subsequently made against **you** and reported to us shall be deemed to have been made at the time such written notice was received by us.

In the event we determine there is an opportunity to avoid a **claim** arising out of a potential **claim you** have reported to us and we incur legal or expert expenses to do so, such expense will be at our cost and not be subject to **your** deductible.

E. Notice

Notice of any **claim** or potential **claim** should be sent by regular mail or email to the addresses specified in the Declarations. The date the Insurer receives such notice shall constitute the date such notice was given. Proof of mailing shall be sufficient proof of notice.

F. Changes/Transfer of Interest

Notice to any of our agents or knowledge possessed by any such agent or any other person shall not act as a waiver or change in any part of this Policy. **You** agree to first obtain our written consent to make any changes, transfers or assignments of this Policy. None of the provisions of this Policy will be waived, changed or modified except by written

 © CNA All Rights Reserved. 

endorsement issued to form a part of this Policy.

G. Entire contract

This Policy consists of the Declarations, the Policy form, all endorsements attached to the Policy, the completed and signed application and all supplementary information and statements **you** have provided to us.

By acceptance of this Policy **you** agree that all of the information and statements provided to us by **you** are true, accurate and complete. This Policy has been issued in reliance upon the truth and accuracy of those representations.

No concealment, misrepresentation or fraud shall avoid or defeat recovery under this Policy unless such concealment, misrepresentation or fraud was material. Concealment, misrepresentation or fraud in the procurement of this Policy, which if known by us would have led to refusal by us to make this contract or provide coverage for a **claim** hereunder, will be deemed material.

H. Other Insurance

If **you** have other valid and collectible insurance that applies to the **claim**, this insurance shall be excess over any other insurance, self-insurance, self-insured retention or similar programs, whether primary, excess, contingent or on any other basis.

If no other insurer defends a **claim** that we have an obligation to defend, we will do so, but we will be entitled to **your** rights against all those other insurers.

We will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay in absence of this insurance and the total of all deductible and self-insured amounts under all such other insurance or other available programs. This provision does not apply to other insurance that was purchased by **you** specifically to apply in excess of the limits of liability shown on the Declarations of this Policy.

I. Legal Action Limitation

**You** agree not to bring any legal action against us concerning this Policy unless **you** have fully complied with all the provisions of this Policy, and the amount of **your** obligation to pay has been finally decided. Such amount can be decided by final judgment against **you** or by written agreement between **you**, us and the claimant. **You** agree to bring any such action within two years, or during any applicable statute of limitations for the bringing of such action, whichever is longer.

 © CNA All Rights Reserved. 

No individual or entity, or their legal representative, is entitled to recover under this Policy until they have secured such judgment or written agreement. Recovery is limited to the extent of the insurance afforded by this Policy. No individual or entity has any right under this Policy to include us in any action against **you** to determine **your** liability, nor will we be brought into such an action by **you** or **your** representative.

J. Subrogation

In the event of any payment under this Policy, we shall be subrogated to all **your** rights of recovery thereof against any person or organization, including any rights **you** may have against any other person insured under this Policy who is involved in dishonest, fraudulent, criminal, malicious or intentional conduct. **You** shall execute and deliver instruments and papers and do whatever else is necessary to secure and collect upon such rights. **You** shall do nothing to prejudice such rights.

K. Premium

Premiums for this Policy are payable to us in advance. They may be paid to us or our authorized representative. The first premium is due on the effective date of this Policy.

L. Innocent insureds

If coverage under this Policy would be excluded as a result of any criminal, dishonest, illegal, fraudulent or malicious acts of any of **you**, we agree that the insurance coverage that would otherwise be afforded under this Policy will continue to apply to any of **you** who did not personally commit, have knowledge of, or participate in such criminal, dishonest, illegal, fraudulent or malicious acts or in the concealment thereof from us.

M. Reimbursement

While we have no duty or obligation to do so, if we advance any amounts in payment of **damages** or **claim expenses** within the amount of the applicable deductible or in excess of the applicable limit of liability, **you** agree to be jointly and severally liable to us for such amounts. Upon demand, **you** agree to immediately repay such amounts to us.

N. Bankruptcy/Insolvency

The insolvency or bankruptcy of **you**, or the insolvency of **your** estate, shall not release us from the payment of **damages** or **claim expenses** recoverable under this Policy.


© CNA All Rights Reserved.

O. Cancellation/Non-Renewal

**Your** rights and ours are stated in the attached State Provisions endorsement.

P. Liberalization

In the event we make any filing with the insurance supervisory authorities of the state in which this Policy is issued that would broaden coverage under this Policy, and;

1. such filing is approved or accepted by such insurance authorities to be effective while this Policy is in force; and
2. such filing includes provisions that would extend or broaden this insurance without additional premium,

the benefit of such extended or broadened provisions shall inure to **your** benefit as though substitution of such policy form had been made. However, such benefit shall not apply to any **claim** which has been made against **you** or potential **claim** reported to us on or prior to the date such benefit is approved or accepted.

Q. Spouses, Heirs, Legal Representatives

**Your** estates, heirs, legal representatives, assigns, spouses and domestic partners shall be considered insured under this Policy; provided, however, coverage is afforded to such estates, heirs, legal representatives, assigns, spouses and domestic partners only for a **claim** arising solely out of their status as such and, in the case of a spouse or domestic partner, where such **claim** seeks **damages** from marital community property, jointly held property or property transferred from **you** to the spouse or domestic partner. No coverage is provided for any act, or omission of an estate, heir, legal representative, assign, spouse or domestic partner.

R. Economic and Trade Sanctions

This Policy does not provide coverage for any of **you**, any transaction or that part of **damages** or **claim expenses** that is uninsurable under the laws or regulations of the United States concerning trade or economic sanctions.

## VII. EXTENDED CLAIM REPORTING PERIOD

As used herein, **"extended claim reporting period"** means the period of time after the end of the **policy period** for reporting **claims** to us that are made against **you** during the applicable **extended claim reporting period** by reason of an act or omission that happened prior to the end of the **policy period** and is otherwise covered by this Policy. It is understood and agreed that the **extended claim reporting period** shall not be construed to be a new policy and any **claim** submitted during such period shall otherwise be governed by this Policy.

 © CNA All Rights Reserved. 

A. Automatic **extended claim reporting period**

If this Policy is canceled or non-renewed by either us or by the **Named Insured,** we will provide to the **Named Insured** an automatic, non-cancelable **extended claim reporting period** starting at the termination of the **policy period** if the **Named Insured** has not obtained another policy of accountants professional liability insurance. This automatic **extended claim reporting period** will terminate after sixty (60) days.

B. Optional **extended claim reporting period**

If this Policy is canceled or non-renewed by either us or by the **Named Insured**, then the **Named Insured** shall have the right to purchase an optional **extended claim reporting period**. Once purchased, the **extended claims reporting period** can not be cancelled and the premium for such optional **extended claim reporting period** shall be fully earned upon inception. Such right must be exercised by the **Named Insured** within sixty (60) days of the termination of the **policy period** by providing written notice to us.

C. Elimination of right to any **extended claim reporting period**

There is no right to the optional **extended claim reporting period** if we cancel or refuse to renew this Policy due to non-payment of premiums or any material misrepresentations in the application for this Policy.

IN WITNESS WHEREOF, we have caused this Policy to be executed by our Chairman and Secretary, but this Policy shall not be binding upon us unless completed by the attachment of the Declarations.

---

Chairman | Secretary


© CNA All Rights Reserved.
ICN# 502357

# DECLARATIONS
# ACCOUNTANTS PROFESSIONAL LIABILITY POLICY

PRODUCER BRANCH PREFIX POLICY NUMBER

**003613 970 APL 658734374**

INSURANCE IS PROVIDED BY THE CONTINENTAL INSURANCE COMPANY OF NEW JERSEY
151 N. Franklin Street, CHICAGO, IL 60606
A STOCK INSURANCE COMPANY
REFERRED TO IN THIS POLICY AS WE, US, OR OUR.

1. Named Insured and Mailing Address

Meshinsky & Associates LLC
1155 W Chestnut St
Union, NJ 07083

* * * * NOTICE * * * *
THIS IS A CLAIMS-MADE AND REPORTED POLICY AND COVERS ONLY CLAIMS FIRST MADE AGAINST AN INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD. PLEASE READ THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT.

2. POLICY PERIOD: FROM: 3/01/21 TO: 3/01/22 at 12:01 A.M.
Standard time at your address shown above.

3. PRIOR ACTS DATE: 3/01/18 at 12:01 A.M.

4. DEDUCTIBLE: Per Claim Deductible $1,000 or Aggregate Deductible ____________

5. LIMITS OF LIABILITY: (INCLUDES CLAIM EXPENSES UNLESS AMENDED BY ENDORSEMENT)

$500,000 PER CLAIM
$500,000 AGGREGATE

6. FOR NON-RENEWAL: 30 days notice will be given you in accordance with policy conditions.

7. PRINTED ENDORSEMENTS ATTACHED AT POLICY ISSUANCE INCLUDE:

G-127136-A(1/16) Policy
G-127137-A29(7/12) Declarations Page
G-127157-A(6/97) Nuclear Energy & Pollution Excl.
G-127164-A29(6/97) Amend. Termination Provisions - NJ
G-141584-A(6/03) Policyholder Notice
CNA90673XX-(11/17) Amend Limits of Liability Endorsement
CNA86549XX CPA Net Protect Prime Endorsement
CNA87547XXC Sole Owner Death / Disability ECRP

| | | |
|---|---|---|
| 8. | $2,747.00 | ANNUAL PREMIUM |
| | $16.48 | STATE SURCHARGE |
| | $2,763.48 | TOTAL PREMIUM |

9. WHO TO CONTACT TO REPORT A CLAIM OR POTENTIAL CLAIM:

Director of Claims
Accountants Professional Liability
CNA Insurance Companies
151 N. Franklin Street
Chicago, IL 60606
APLNewLoss@CNA.com

THIS POLICY IS NOT VALID UNTIL SIGNED BY OUR AUTHORIZED REPRESENTATIVE.

Authorized Representative

CONTINENTAL INSURANCE COMPANY OF NEW JERSEY

# ACCOUNTANTS PROFESSIONAL LIABILITY POLICY

## Amendatory Endorsement
## Nuclear Energy and Pollution Exclusion

We agree with **you** that the following EXCLUSIONS are added to **your** Policy:

We will not defend or pay under this Policy any **claim** based upon or arising out of any loss, cost or expense:

1. under any circumstances, due to nuclear reaction, radiation, or contamination, regardless of cause.
2. which would not have happened in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.
3. arising out of any:
   a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or
   b. **Claim** or suit by or on behalf of a governmental authority for damage because of testing for, monitoring, cleaning up, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

**"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste**.** Waste includes materials to be recycled, reconditioned or reclaimed.

ALL OTHER PROVISIONS OF THIS POLICY REMAIN UNCHANGED.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 001 | APL 658734374 | Meshinsky & Associates LLC | 3/01/2021 |

Countersigned by ______________________
Authorized Representative

CONTINENTAL INSURANCE COMPANY OF NEW JERSEY

## ACCOUNTANTS PROFESSIONAL LIABILITY POLICY

## AMENDMENT OF TERMINATION PROVISIONS - NEW JERSEY

We agree with **you** that any cancellation or non-renewal provisions contained in the Policy to which this endorsement is attached are deleted and replaced by the following:

I. Cancellation

A. This Policy can be canceled by either the **Named Insured** or us.

1. The **Named Insured** can cancel this Policy at any time. To do so, the **Named Insured** must:

a. return the Policy to us or any of our authorized representatives; or
b. mail a written notice to us;
stating when the cancellation is to be effective. We must receive the Policy or written notice before the cancellation date.

2. We can cancel this Policy by g iving written notice to the **Named Insured** at least:

a. 10 days, if cancellation is for:
(i) nonpayment of premium. **You** may continue the coverage by payment in full at any time prior to the date the cancellation is effective; or
(ii) moral hazard;
b. not more than 120 days nor less than 30 days, if cancellation is for any other reason;
before the date the cancellation is effective.

B. We will mail or deliver notice to the **Named Insured** at the last mailing address known to us.

C. Notice of cancellation will state the date the cancellation is effective. The Policy will end on that date. The grounds for such cancellation shall also be stated, and upon the **Named Insured**'s written request, we shall furnish the facts upon which the cancellation is based.

Notice will also include, if for non-payment of premium:
1. The amount of premium due;
2. The due date; and
3. The effect of non-payment by the due date.

D. If notice is mailed, proof of mailing will be sufficient proof of notice.

E. If this Policy is canceled, we will send the **Named Insured** any premium refund due within a reasonable time not to exceed 60 days of cancellation or notice whichever occurs last. If we cancel, the refund will be pro-rata. If the **Named Insured** cancels, the refund may be less than pro-rata.

The cancellation will be effective even if we have not made or offered a refund.

F. Pursuant to New Jersey law, this Policy cannot be canceled or non-renewed for any underwriting reason or guideline(s) which is arbitrary or capricious or unfairly discriminatory or without adequate prior notice to the **Named Insured**. The underwriting reasons or guidelines that we can use to cancel or non-renew this Policy are maintained by us in writing and will be furnished to the **Named Insured** and/or the **Named Insured**'s lawful representative upon written request.

This provision shall not apply to any policy which has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless that policy is a renewal policy.

II. Non-Renewal

If we decide not to renew this Policy, advance written notice shall be mailed or delivered to the **Named Insured** in writing not more than 120 days nor less than 30 days notice at the address shown in this Policy. The notice shall include the reason for such non-renewal.

If we failed to provide the required non-renewal notice, the **Named Insured** shall be entitled to continue the expiring Policy at the same terms and premium until such time as we send appropriate notice of termination to the **Named Insured**.

This provision shall not apply in the event the **Named Insured** has:

A. requested or agreed to non-renewal; or
B. insured elsewhere or accepted replacement coverage.

III. Renewal

In the event we are willing to renew this Policy, the amount of the renewal premium and any change in contract terms shall be given to the **Named Insured** in writing not more than 120 days nor less than 30 days prior to the due date of the premium and shall clearly state the effect of non-payment of the premium by the due date.

If we fail to provide the required renewal notice or to issue and deliver a certificate or notice extending the term of the Policy beyond its **policy period** or term, the **Named Insured** shall be entitled to continue the expiring Policy at the same terms and premium until such time as we send appropriate notice of renewal to the **Named Insured**.

ALL OTHER PROVISIONS OF THE POLICY REMAIN UNCHANGED.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 002 | APL 658734374 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| Meshinsky & Associates LLC | 3/01/2021 |

Countersigned by ______________________
Authorized Representative

CNA

## POLICYHOLDER NOTICE

Ethics and proper business conduct has been the cornerstone of CNA since 1897. While much has changed during the last century, our commitment to these core values has not wavered. We strongly believe that proper business conduct is more than the practice of avoiding wrong; it is also a matter of choosing to do right. Nowhere is this more essential than helping in the fight against terrorism. As such, we are committed to complying with U.S. Department of Treasury Office of Foreign Asset Control (OFAC) requirements.

Through a variety of laws, OFAC administers and enforces economic sanctions against countries and groups of individuals, such as terrorists and narcotics traffickers. These laws prohibit all United States citizens (including corporations and other entities) and permanent residents from engaging in transactions with sanctioned countries and with individuals and entities on the Specially Designated Nationals (SDN) list. Because all U.S. citizens and companies are subject to this law, we wanted to be sure you were aware of its scope and restrictions. If you haven t already done so, you may want to consider discussing this issue with your legal counsel to ensure you are in compliance.

For insurance companies, accepting premium from, issuing a policy to, insuring property of, or making a claim payment to an individual or entity that is the subject of U.S.-imposed economic sanctions or trade embargoes usually are violations of these laws and regulations. Fines for violating OFAC requirements can be substantial. CNA has established an OFAC compliance program part which includes the use of exclusionary policy language. We believe this makes good business sense for CNA and you.

Our records indicate that you have insurance coverage coming up for renewal with us. The purpose of this letter is to advise you that your renewal policy includes OFAC exclusionary policy language, which may reduce or eliminate certain coverage. Specifically, if it is determined that your policy violates certain Federal or State laws or regulations, such as the U.S. list of Specially Designated Nationals or Blocked Persons (organizations or individuals associated with terrorist groups), any term or condition of your policy will be null and void to the extent it violates the applicable laws or regulations of the United States.

We're sure you share our commitment to compliance and thank you for your cooperation.

Your policy language reads as follows:

# ECONOMIC AND TRADE SANCTIONS CONDITION

The following condition is added to the Policy:

**ECONOMIC AND TRADE SANCTIONS CONDITION**

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1. Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;
2. Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;
3. Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;
4. Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or
5. Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

CNA

## AMEND LIMITS OF LIABILITY ENDORSEMENT
## (Risk Management Incentives - Use of Engagement Letters)

It is understood and agreed that the section entitled **LIMITS OF LIABILITY**, the sub-section entitled Risk Management Incentives, the paragraph entitled Use of Engagement Letters, the phrase “then we will reduce **your** deductible, applying to that **claim**, by 50%, up to a total amount of $5,000” is amended to delete “$5,000” and replace it with “$10,000.”

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.



© CNA All Rights Reserved.

CNA

CPA NETPROTECT PRIME ENDORSEMENT
(INCLUDING FIRST PARTY LOSS)

In consideration of the additional premium amount $732.00 , it is understood and agreed that the Policy is amended as follows:

I. The Declarations are amended to add the following:

**CPA NetProtect Coverage Schedule**

| | |
|---|---|
| **Claims** for **Network Damage/Extortion Demands/First Party Loss** | |
| Limit applicable to all **claims** for **network damage** in the aggregate | $250,000 |
| Sublimit applicable to all **extortion demands** in the aggregate | $62,500 |
| Sublimit applicable to all **first party loss** in the aggregate | $62,500 |
| Deductible applicable to each **claim** for **network damage** | $1,000 |
| Deductible applicable to each **extortion demand** | $1,000 |
| Deductible applicable to each **network impairment** | $1,000 |
| Business Interruption Waiting Period | 10 hours |
| **Privacy Event Expenses** | |
| Limit applicable to all **privacy event expenses** in the aggregate | $100,000 |
| Deductible applicable to each **privacy event** | $1,000 |
| **Regulatory Proceedings** | |
| Excess Limit/**Regulatory Fines** Limit | $62,500 |
| Deducible applicable to each **Regulatory Proceeding** for Excess Limit/**Regulatory Fines** Limit | $1,000 |
| **CPA NetProtect Prior Acts Date:** 3/01/2018 | |

II. The section entitled **COVERAGE AGREEMENTS** is amended as follows:

A. Paragraph A. is amended by the addition of the following:

In accordance with all the terms and conditions of the Policy, we will also pay on **your** behalf all sums in excess of the deductible, up to our limits of liability, that **you** become legally obligated to pay as **damages** and **claim expenses** because of a **claim** for **network damage** that is both first made against **you** during the **policy period** by reason of any act or omission by **you** or by any person (including a **rogue employee**) for whose **wrongful acts you** are legally liable provided that:


© CNA All Rights Reserved.

CNA

1. the **wrongful act** occurs on or after the **CPA NetProtect prior acts date a**nd before the end of the **policy period**;

2. such **claim** is reported to us in accordance with the requirements of this Policy;

3. prior to the inception date of the **policy period**, **you** did not have k nowledge of any such **wrongful act**;

4. the **wrongful act** or any **interrelated wrongful acts** have not been the subject of any notice given under any prior policy; and,

5. such **claim** is not covered under any other coverage agreement of this Policy or any oth er **coverage issued by us, or any affiliate of such Insurer.**

B. The following is added:

- Supplemental Insuring Agreements

  **Privacy Event Expense**

  1. In accordance with all the terms and conditions of the Policy, we will pay on **your** behalf any **privacy event expenses**, in excess of the deductible, up to our limits of liability, that directly respond to a **privacy event** first discovered during the **policy period**; provided, however, that all **privacy event s** must be reported to us in accordance with the requirements of this Policy and all **privacy event expenses** must be:

     a. incurred within twelve months following the date that **you** reported the **privacy event**; and,

     b. consented to in writing by us (such consent not to be unreasonably withheld).

  2. **Extortion Payments**

     In accordance with all of the terms and conditions of the Policy, we will reimburse **you** for any **extortion payments** in excess of the deductible, up to our limit of liability, that directly respond to an **extortion demand** first made during the **policy period**; provided, however, that all **extortion demands** must be reported to us in accordance with the requirements of this Policy and all **extortion payments** must be:

     a. incurred with in twelve months following the date that **you** reported the **extortion demand**; and,

     b. consented to in writing by us (such consent not to be unreasonably withheld).

- First Party Insuring Agreements

  1. **Business Interruption and Extra Expense**

     In accordance with all the terms and conditions of the Policy, we will pay **you** all sums in excess of the deductible, up to our limits of liability, that **you** incur for **business income and extra expense** resulting from an **exploit** that first causes **network impairment** during the **policy period**;


© CNA All Rights Reserved.

CNA

2. **Loss of or Damage to Insured Entity's Network**

In accordance with all the terms and conditions of the Policy, we will pay **you** all sums in excess of the deductible, up to our limits of liability, that **you** incur resulting from an **exploit** that first causes **network impairment** during the **policy period**, that are required to restore the **network** or information residing on the **network** to substantially the form in which it existed immediately prior to such **exploit**.

III. Solely with respect to the coverage provided by this endorsement, the section entitled **DEFINITIONS** is amended as follows:

A. The definitions of **Claim**, **Damages**, **Interrelated claims** and **You** and **your** are deleted in their entirety and are replaced with the following:

**Claim** means:

A. a written demand (other than an **extortion demand**) for monetary damages or non-monetary relief (including demands for injunctive or declaratory relief); or
B. a civil adjudicatory proceeding or arbitration against **you**,
alleging a **wrongful act**.

However, a **claim** does not include any criminal proceeding or investigation or any regulatory proceeding or investigation.

**Damages** means civil awards, settlements and judgments (including any award of pre-judgment or post-judgment interest) which **you** are legally obligated to pay as a result of a covered **claim**. **Damages** shall not include:

A. return or restitution of **your** profits, royalties, fees, expenses, taxes or costs;
B. criminal, civil, administrative or regulatory relief, fines or penalties;
C. any amounts for which there is no legal recourse against **you**, including those which **you** are not legally obligated to pay;
D. injunctive or declaratory relief;
E. matters which are uninsurable as a matter of law; or
F. plaintiff's attorney fees or expenses associated with items A. through E. above.

**Interrelated claims** are all **claims** arising out of a single **wrongful act** or arising out of **interrelated wrongful acts**.

**You** and **your** means the **Named Insured** and any **predecessor firm** and:

A. any person who is or becomes a partner, officer, director, associate, or employee of the **Named Insured**;
B. any person previously affiliated with the **Named Insured** or a **predecessor firm** as a partner, officer, director, associate, or employee;
C. any person or entity that is an independent contractor to the **Named Insured** provided that such person or entity is not:
   1. employed by the **Named Insured** or **predecessor firm** or by any entity controlled, owned, managed or operated by the **Named Insured** or **predecessor firm**; or
   2. controlled, owned, managed or operated by the **Named Insured** or **predecessor firm** or by any entity that is controlled, owned, managed or operated by the **Named Insured** or **predecessor firm**;

but only while such person is acting in the capacity as such.


© CNA All Rights Reserved.

CNA

B. The definition of **Interrelated acts or omissions** is deleted in its entirety.

C. The following new definitions are added:

**CPA NetProtect prior acts date** means the date, if any, set forth as such in the CPA NetProtect Coverage Schedule of the Declarations.

**Business income and extra expense** means:

A. the amount of net income, before interest, tax, depreciation or amortization, that **you** would have earned during the **period of restoration** but for the **network impairment**; and,

B. **extra expense**.

However, **Business income and extra expense** does not include:

1. ordinary operating expenses incurred by **you** during the **period of restoration**;
2. costs or expenses to update, upgrade, enhance, or replace **your network** beyond that which existed prior to the occurrence of the **network impairment**;
3. costs or expenses **you** incur to prove or document **first party loss**; or
4. **privacy event expenses** and **extortion payments**.

**Commerce operations** means **your** income producing activities.

**Exploit** means **unauthorized access, electronic infection** or a **denial of service attack** or **related incidents**.

**Extra expense** means any reasonable and necessary expenses, in excess of **your** normal operating expenses, that **you** incur during the **period of restoration** associated with restoring and resuming **commerce operations,** including:

A. reasonable expense incurred to minimize the interruption of **commerce operations** not covered elsewhere in this Policy;

B. reasonable expense incurred to resume **commerce operations** on a temporary basis, including those associated with securing temporary third party Internet Service Provider services, temporary website and/or e-mail hosting services, rental of temporary **networks**, other temporary equipment or service contracts; and

C. reasonable expense incurred to engage a third party security expert to:

   1. investigate, minimize and stop damage to the **network** caused by the **exploit** while such **exploit** is ongoing; and
   2. collect, analyze and preserve forensic evidence of an **exploit** for use in identifying the perpetrator responsible for the disruption to **commerce operations**.

**Extortion demand** means an incident or series of incidents or **related incidents** occurring during the **policy period** where **you** receive a threat to launch an attack on, to suspend, or to otherwise disrupt a **network**, disrupt or deface your website or release or use **protected information** in **your** care**,** unless monies are paid or specified action is taken, and an **you** believe there is an imminent and probable danger of such action. An **extortion demand** does not include any demand seeking monies from **you** that are allegedly due and owing pursuant to contract or operation of law.



© CNA All Rights Reserved.

**Extortion payment** means all reasonable and necessary expenses incurred by **you** with our prior consent, in order to respond to an **extortion demand**, including payment of monies demanded by an extortionist. **Extortion payments** do not include such expenses to the extent **you** have recovered such expenses or been reimbursed for them from any other source.

**First party loss** means all amounts which we are obligated to pay as set forth in the First Party Insuring Agreements.

**Interrelated wrongful acts** means any **wrongful acts** that are logically or causally connected by reason of any common fact, circumstance, situation, transaction, event, advice or decision.

**Network impairment** means the disruption, modification, destruction or damage to **your network** that results in the impairment of **your network** to such an extent that **you** are substantially unable to conduct **commerce operations**.

**Non-public corporate information** means proprietary and confidential information including trade secrets, of a third-party entity.

**Period of restoration** means the period of time that:

A. begins with the date and time that **commerce operations** have first been interrupted by a **network impairment** and after application of the Business Interruption Waiting Period, as specified in the CPA NetProtect Coverage Schedule of the Declarations; and,

B. ends with the earlier of:

   1. the date and time **commerce operations** are restored to substantially the level of operation that existed prior to the **network impairment**; or,
   2. the date and time **commerce operations** would have been restored to substantially the level of operation that existed prior to the **network impairment** if **you** exercised due diligence in remediating such **network impairment**.

**Privacy event** means any event or series of events or **related events** which in **your** reasonable opinion did cause or is reasonably likely to result in the disclosure or unauthorized use of **protected information** of clients of the firm or the owners, partners, officers and employees of **you**, in **your** care or custody.

**Privacy event expenses** means all reasonable and necessary fees, costs and expenses incurred by **you** and consented to by us:

A. to provide voluntary notification to individuals or entities whose **protected information** may have been subject to a **privacy event**;

B. to directly effect compliance with a **security breach notice law** including notification to individuals or entities who are required to be notified;

C. to hire a computer forensics firm to investigate the existence and cause of a **privacy event** and to determine the extent such **protected information** has been or may have been disclosed;

D. to hire an attorney or expert to negotiate with regulators and determine the applicability of and the actions necessary to comply with **security breach notice laws**;

E. to minimize harm to **your** reputation from a **privacy event**, including but not limited to the costs to set up a call center or provide a credit monitoring service for those impacted by a **privacy event**;

F. to remediate any deficiencies that gave rise to the **privacy event**.

**Protected information** means **non-public corporate information** or **non-public personal information**.


© CNA All Rights Reserved.

CNA

**Regulatory fines** means civil fines, sanctions or penalties insurable under applicable law and imposed under any **regulatory proceeding** for a violation of any **privacy breach notice law** or any law, statute or regulation governing **protected information**.

**Related events** mean all events that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

**Related incidents** mean all incidents that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

**Rogue employee** means any of **your** employees who act outside of their scope of employment.

**Security breach notice law** means any statute or regulation that requires an entity that maintains **protected information** to provide notice to specified individuals of any actual or potential unauthorized disclosure or potential disclosure of such **protected information**.

**Wrongful act** means any actual or alleged act, error, omission, neglect or breach of duty that results in any **security breach** of **your network**. Provided, however, **wrongful act** shall not include any act, error, omission, neglect or breach of duty in the rendering or failure to render **professional services**.

IV. Solely with respect to the coverage provided by this endorsement, the section entitled **LIMITS OF LIABILITY**, is amended as follows:

A. Paragraphs A., B. and C. are deleted in their entirety and are replaced with the following

A. All **Claims** Aggregate Limit of Liability

The limit of our liability for **damages** and **claim expenses** for all **claims** for **network damage** shall not exceed the amount stated in the CPA NetProtect Coverage Schedule of the Declarations.

B. All **Extortion Demands** and **First Party Loss** Aggregate Sublimit of Liability

The limit of our liability for **extortion payments** for all **extortion demands**, and the limit of our liability for **first party loss** for all **network impairments**, shall not exceed the applicable amounts stated in the CPA NetProtect Coverage Schedule of the Declarations. Such amounts are sublimits of liability which are included within, and not in addition to, the limit of our liability for **damages** and **claim expenses** for all **claims** for **network damage** stated in the CPA NetProtect Coverage Schedule of the Declarations.

C. Deductibles

Our obligation to pay **damages** and **claim expenses** as a result of a **claim** for **network damage**, our obligation to pay **extortion payments** as a result of an **extortion demand**, our obligation to pay **first party** loss as a result of a **network impairment** and our obligation to pay **privacy event expenses** as a result of a **privacy event** is in excess of the amount of the applicable deductibles stated in the CPA NetProtect Coverage Schedule of the Declarations. The **Named Insured** agrees to pay all **damages**, **claim expenses**, **extortion payments**, **first party loss** and **privacy event expenses** up to the amount of such deductibles. The deductible amounts apply on a per **claim/extortion demand/network impairment/privacy event** basis. Payment of the deductibles or portions thereof shall be made by the **Named Insured** as **claim expenses/extortion payments/first party loss/privacy event expenses** are incurred or **damages** are paid.



© CNA All Rights Reserved.

B. The following new paragraph is added:

- All **Privacy Events** Aggregate Limit of Liability

  The limit of our liability for **privacy event expenses** for all **privacy events** shall not exceed the amount set forth in the CPA NetProtect Coverage Schedule of the Declarations.

V. The section entitled **SUPPLEMENTARY BENEFITS** is amended by the deletion of the paragraph entitled **Regulatory Proceeding** in its entirety which is replaced with the following:

**Regulatory Proceeding**

We agree to pay **your** attorney fees and other reasonable costs, fees and expenses incurred in responding to a **regulatory proceeding**, as well as all **regulatory fines** imposed under only those **regulatory proceedings** described in paragraph b. below, initiated during the **policy period** and reported to us in accordance with Section VI.C. of this Policy, provided that such **regulatory proceeding** is initiated in connection with:

a. an act or omission in the rendering of **professional services**; or

b. an actual or alleged violation of a **privacy breach notice law** or any law referenced under the definition of **privacy injury and identity theft**, but only if such actual or alleged violation concerns **confidential commercial information** or **non-public personal information** that was gathered in the course of rendering **professional services**;

that occurred after the **prior acts date** indicated on the Declarations.

Except as stated below, the maximum amount we will pay for such attorney fees and other reasonable costs, fees and expenses (other than **regulatory fines**) is $25,000 regardless of the number of **regulatory proceedings** or the number of **you** who are subject to such **regulatory proceedings**. Solely with respect to those **regulatory proceedings** described in paragraph b. above, to the extent that the aforementioned $25,000 amount is exhausted by the payment of such attorney fees and other reasonable costs, fees and expenses, or to the extent that any **regulatory fines** are imposed under a **regulatory proceeding**, the maximum amount we will pay for any additional attorney fees and other reasonable costs, fees and expenses incurred in responding to a **regulatory proceeding** or for any **regulatory fines**, or any combination of these amounts, shall not exceed the amount stated in the CPA NetProtect Coverage Schedule of the Declarations (hereafter the "Excess Limit/**Regulatory Fines** Limit") regardless of the number of **regulatory proceedings** or the number of **you** who are subject to such **regulatory proceedings**, subject to the following conditions:

i. our obligation to pay any such additional attorney fees and other reasonable costs, fees and expenses, as well as our obligation to pay any **regulatory fines**, is in excess of the deductible in the amount stated in the CPA NetProtect Coverage Schedule of the Declarations. Such deductible amount shall apply to each **regulatory proceeding** with respect to:

   1) such additional attorney fees and other reasonable costs, fees and expenses;

   2) **regulatory fines**; or



© CNA All Rights Reserved.

CNA

3) a combination of both.

ii. the Excess Limit/**Regulatory Fines** Limit is a sublimit of liability which is included within, and not in addition to, the limit of our liability for **damages** and **claim expenses** for all **claims** for **network damage** stated in the CPA NetProtect Coverage Schedule of the Declarations; and

iii. the Excess Limit/**Regulatory Fines** Limit is one aggregate limit encompassing all such additional attorney fees and other reasonable costs, fees and expenses as well as all **regulatory fines**.

VI. Solely with respect to the coverage provided by this endorsement, the section entitled **EXCLUSIONS** is amended as follows:

A. Exclusion A. is deleted in its entirety and is replaced with the following:

A. any **claim** based upon or arising out of any actual or alleged **bodily injury** (including death), sickness, disease, emotional distress, mental anguish, of any person, or property damage;

B. The following new exclusions are added:

This Policy does not apply to:

- any **claim** by or on behalf of any of **you** provided, however that this exclusion does not apply to:
  1. any **claim** that is in the form of a crossclaim, third-party claim or otherwise for contribution or indemnity which is part of and results directly from a **claim** which is not otherwise excluded under this Policy;
  2. any **claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, liquidator, receiver or rehabilitator for **you** or any assignee of such trustee, examiner, liquidator, receiver or rehabilitator;

- any **claim** based upon or arising out of any actual or alleged discrimination, humiliation, harassment or misconduct that relate to an individual's race, creed, color, age, sex, national origin, religion, handicap, marital status or sexual preference;

- any **claim** as a direct result of any action or order by any domestic or foreign law enforcement, administrative, regulatory or judicial body or other governmental authority;

- any **claim** based upon or arising out of any failure of:
  1. electrical infrastructure;
  2. telecommunications infrastructure; or
  3. any satellite,

  which is not under **your** operational control;

- any **claim** based upon or arising out of price discounts, prizes, awards, coupons or any other valuable consideration given in excess of the total contracted or expected amount;

- any **claim** made against **you** by any entity, if at the time of the **wrongful act** giving rise to such **claim**:
  1. **you** controlled, owned, operated or managed such entity;
  2. **you** were an owner, partner, director, officer or employee of such entity;

  For the purpose of this exclusion, a 15% or more owner of the equity interest of any such entity shall be deemed to be an owner of such entity.


© CNA All Rights Reserved.

CNA

- any **claim** based upon or arising out of actual or alleged infringement of patent;

- any **claim** based upon or arising out of any actual or alleged:
  1. unfair competition, dilution, deceptive trade practices, civil actions for consumer fraud or false or deceptive advertising or misrepresentation in advertising;
  2. charges of price fixing, monopolization or restraint of trade;
  3. violation of:
     a. the Federal Trade Commission Act;
     b. the Sherman Act, the Clayton Act, or any federal statutory provision regarding anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade;
     c. the Racketeer Influenced and Corrupt Organizations Act;
     d. any rules or regulations promulgated under or in connection with the above statutes, or any similar provision of any federal, state, foreign or other law (including common law) or statute.

C. The following is added:

**Exclusions applicable to first party loss**

This Policy does not apply to any **first party loss**, regardless of any other cause or event that contributes concurrently or in any sequence to the **first party loss**, caused by or resulting from:

- any defect of design, implementation, operation, incompatibility or any other fault of data and software or **your network**, or any part thereof where such defect or fault is introduced by **your**:
  1. use of a third party product, including but not limited to software and equipment, in a manner inconsistent with the manufacturer's intended use;
  2. modification of a third party product or integration of components in violation of the manufacturer's warranty or other license terms;
  3. integration of components in a manner inconsistent with any of the components' intended use as established by its manufacturer;

- any deliberately dishonest, fraudulent or criminal act or omission, or any willful violation of any statute or regulation, by or on behalf of **your** executive officers;

- any adverse impact on goodwill, reputation or potential future income;

- any action or order by any domestic or foreign law enforcement, administrative, regulatory or judicial body or other governmental authority;

- direct physical loss of or damage to property;

- any change in value of shares, stock or securities;

- unauthorized and deliberate malicious act or omission by a vendor or other third party authorized by **you** to perform services on **your network**.

VII. Solely with respect to the coverage provided by this endorsement, the section entitled **POLICY CONDITIONS** is amended as follows:


© CNA All Rights Reserved.

CNA

A. The paragraphs entitled Duties in the event of a **claim** and Duties in the event of a potential **claim** are deleted in their entirety and are replaced with the following:

Notice of **Claim**, **Privacy Event** or **Extortion Demand**

As a condition precedent to our obligations, **you** shall give written notice of any **claim**, **privacy event** or **extortion demand** to us as soon as reasonably practicable after **you** learn of such **claim**, **privacy event** or **extortion demand** but in no event later than ten (10) days after termination or expiration of the **policy period** or **extended claim reporting period**, if applicable.

Notice of Circumstances

If during the **policy period**, **you** first become aware of any facts or circumstances which may reasonably be expected to give rise to a **claim** and during such **policy period** give written notice to us of:

1. the allegations anticipated as the basis of the potential **claim** and the names of any potential claimants;
2. the identity of any of **you** allegedly responsible for such specific facts and circumstances;
3. the consequences which have resulted or may result from such specific facts and circumstances;
4. the amount of the potential monetary damages or the nature of non-monetary relief which may be sought in consequence of such specific facts and circumstances; and
5. the circumstances by which **you** first became aware of such specific facts and circumstances,

then any such covered **claim** which is subsequently made and which arises out of such facts and circumstances shall be deemed to have been first made against **you** and reported to us by **you** at the time such written notice was received by us.

B. The following is added:

Notice of **Network Impairment**

If a **network impairment** takes place or is reasonably likely to take place, **you** must do the following:

1. provide notice to us as soon as practicable;
2. such notice should include particular details as to the nature of the **network impairment**; and,
3. immediately forward to us all information **you** possess or receive in connection with the **network impairment**.

Proof, Valuation and Payment of **First Party Loss**

1. Proof of **First Party Loss**

   **You** must submit a written proof of **first party loss** providing details relating to the particulars and composition of the amounts claimed in the event of a **network impairment**. The proof of loss shall be submitted with reasonable promptness, but in no event later than 6 months after the date initial notice of **network impairment** was submitted to us. The amount of **first party loss** shall be payable by us, to you, within 60 days after our formal agreement to the amounts claimed in the proof of loss.


© CNA All Rights Reserved.

CNA

2. Examination of **Your** Books and Records
Solely with respect to verification of **first party loss**, **you** agree to allow us to examine and audit **your** books and records that relate to this Policy, at any time during the **policy period** and up to 3 years thereafter.

3. Inspections and Surveys
We have the right but are not obligated to do the following, on our own or through our independent contractors:
   a. make remote electronic scan inspections of all or any part of **your network** or of the **network** of any entities newly acquired by **you** at any time;
   b. give you reports on the conditions we find;
   c. recommend changes to **your network**; or,
   d. conduct loss control and prevention activity.

Any inspections, surveys, reports, or recommendations relates only to insurability and the premiums to be charged. We, by such inspections, surveys, reports, or recommendations, do not warrant that **your network** is safe or in compliance with laws, regulations, codes or standards, domestic or foreign. This condition applies not only to us, but also to any rating, advisory, rate service, or similar organization which makes insurance inspections, surveys, reports or recommendations. Such inspections or surveys will be arranged with **your** and our mutual consent.

4. **First Party Loss** and Arbitration

If **you** and we disagree on the amount of **first party loss** sustained, either may make a written demand for an appraisal of such **first party loss**. If such demand is made, each party will select an appraiser. The appraisers will state separately the amount of **first party loss** sustained. If they fail to agree, **you** and we will submit our differences to an impartial third appraiser jointly selected by both **you** and us. A decision agreed to by any two will be binding. **You** and we will each bear our own respective costs with respect to the selection and retention of our respective appraisals and any disputes arising out of the payment of **first party loss**. We and **you** shall jointly bear the costs of the third appraiser. Any appraisal of **first party loss** shall still be subject to all other terms, conditions and exclusions of this Policy.

All other terms and conditions of the policy remain unchanged.

| |
|---|
| This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy. |


© CNA All Rights Reserved.

CNA

**AMENDATORY ENDORSEMENT**
**SOLE OWNER DEATH AND DISABILITY EXTENDED CLAIM REPORTING PERIOD**
**(FOR USE ALONG WITH THE CPA NETPROTECT ENDORSEMENT/CPA NETPROTECT PRIME ENDORSEMENT)**

It is understood and agreed that the Policy is amended as follows:

I. The section entitled **EXTENDED CLAIM REPORTING PERIOD** is amended by the addition of the following:

Death or disability **extended claim reporting period**

1. If **you** die or become **totally and permanently disabled** during the **policy period**, then upon the latter of the expiration of: the **policy period**; any renewal or successive renewal of this Policy; or any automatic or optional **extended claim reporting period, you** shall be provided with a death or disability **extended claim reporting period** as provided below:

   a. In the event of death, **your** estate, heirs, executors or administrators must, within sixty (60) days of the expiration of the **policy period**, provide us with written proof of the of death. This **extended claim reporting period** is provided to **your** estate, heirs, executors and administrators until the executor or administrator of the estate of **your** estate is discharged.

   b. If **you** become **totally and permanently disabled**, **you** or **your** legal guardian must, within sixty (60) days of the expiration of the **policy period**, provide us with written proof that **you** are **totally and permanently disabled**, including the date the disability commenced, certified by **your** physician. We retain the right to contest the certification made by **your** physician, and it is a condition precedent to this coverage that **you** agree to submit to medical examinations by any physician designated by us. This **extended claim reporting period** is provided until **you** shall no longer be **totally or permanently disabled** or until **your** death, in which case subparagraph a. hereof shall apply.

2. No additional premium will be charged for any death or disability **extended claim reporting period**.

3. Separate death or disability **extended claim reporting period** limits of liability.

   For all **claims** other than **claims** for **network damage** covered under the **CPA NETPROTECT ENDORSEMENT** or **CPA NETPROTECT PRIME ENDORSEMENT** of this Policy, our limit of liability for all claims first made against you and reported to us during any death or disability **extended claim reporting period** shall be reinstated to the limits of liability applicable to this Policy as set forth in the Declarations and Section III., Limits of Liability. Solely with respect to claims for **network damage** covered under the **CPA NETPROTECT ENDORSEMENT** or **CPA NETPROTECT PRIME ENDORSEMENT**, our limit of liability for all such claims for network damage first made against you and reported to us during any death or disability extended claim reporting period shall be reinstated to the limits of liability as set forth in the **CPA NetProtect Coverage Schedule** of such Endorsement.

II. Solely with respect to the coverage provided by this Endorsement, the Section entitled **DEFINITIONS** is amended as follows:

A. The definition of **You** and **Your** is deleted in its entirety and replaced with the following:

   **You** and **Your** means an individual who is the sole owner of the **Named Insured** where such sole owner is an officer, director or employee who renders **professional services** on behalf of the **Named Insured**.

B. The following new definition is added:


© CNA All Rights Reserved.

CNA

**"Totally and permanently disabled"** means that **you** are so disabled as to be wholly prevented from rendering of **professional services** provided that such disability:

A. did not preexist the inception date of this Policy;
B. has existed continuously for not less than six (6) months; and
C. is reasonably expected to be continuous and permanent.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.


© CNA All Rights Reserved.